1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   BLOCK MINING, INC.,                          CASE NO. C24-0319JLR

11                       Plaintiff,               ORDER

          v.
12

13   HOSTING SOURCE, LLC,

14                       Defendant.

15                        **I.      INTRODUCTION**

16       Before the court is Plaintiff Block Mining, Inc.'s ("Block Mining") motion

17   pursuant to Federal Rule of Civil Procedure 64 and RCW 4.44.480 seeking to compel

18   Defendant Hosting Source, LLC ("Hosting Source") to disclose and deposit certain assets

19   into the court's registry.  (Mot. (Dkt. # 67) at 1, 2; Reply (Dkt. # 70).)  Hosting Source

20   opposes Block Mining's motion.  (Resp. (Dkt. # 69).)  The court has reviewed the

21

22

ORDER - 1

1  parties' submissions, the relevant portions of the record, and the applicable law.  Being

2  fully advised,[1] the court DENIES Block Mining's motion.

### II.   BACKGROUND[2]

4      This case arises out of Hosting Source's alleged breach of the parties' December

5  29, 2021 Colocation Mining Services Agreement (the "Agreement"), under which

6  Hosting Source agreed to house and operate Block Mining's bitcoin mining rigs ("Rigs")

7  at Hosting Source's mining facility located in East Wenatchee, Washington.  (Compl.

8  (Dkt. # 1) ¶ 26; *see* Marchiori Decl. (Dkt. # 5) ¶ 20, Ex. A (the "Agreement").)  Under

9  the Agreement, Hosting Source was to install and supply power to Block Mining's Rigs

10  to permit them to mine Bitcoin.  (Compl. ¶¶ 26-28; *see* Agreement.)  The Agreement also

11  provided Block Mining with certain physical and remote VPN access rights so it could

12  monitor and inspect its Rigs. (Compl. ¶¶ 30-32; *see also* Agreement, Ex. A §§ 2.5, 2.7.)

13  In exchange, Hosting Source earned a portion of the Bitcoin rewards generated by Block

14  Mining's Rigs at its mining facility. (Compl. ¶¶ 34-35; *see also* Agreement, Ex. A § 6.)

15      After receiving notice that Block Mining defaulted on its loan obligation with

16  respect to its Rigs, Hosting Source reduced the power supplied to the Rigs.  (Compl.

17  ¶ 39.)  After Block Mining cured the delinquency, however, Hosting Source continued to

18  operate the Rigs on "lower power mode" thereby impeding the amount of Bitcoin that

19

[1] The parties request oral argument.  (*See* Mot. at 1; Resp. at 1.)  The court concludes that oral argument would not aid in its disposition of the motions. See Local Rules W.D. Wash. LCR 7(b)(4).

[2] The court described the factual and procedural background of this case in detail in its June 14, 2024 order and does not repeat that background here except as is relevant to this order. (*See* 6/14/24 Order (Dkt. # 48) at 2-8.)

ORDER - 2

1  could be mined each day.  (*Id.* ¶¶ 46-51.)  Block Mining alleges that Hosting Source

2  never restored its Rigs to full power; rather, Hosting Source terminated the Agreement,

3  shut down Block Mining's Rigs, and removed Block Mining's VPN access, thereby

4  preventing Block Mining from monitoring its Rigs.  (*Id.* ¶¶ 60-62, 69-71.)[3]  Block

5  Mining further alleges that Hosting Source demanded that Block Mining pay it

6  $278,242.41 in claimed fees, but that Block Mining refused to pay, denying that it owed

7  any fees to Hosting Source.  (¶¶ 69-71.)  Hosting Source asserts a counterclaim in

8  connection with "Block Mining's fail[ure] to timely pay all monies due and owing to

9  Hosting Source" and seeks damages in connection with Block Mining's actions.

10  (Answer (Dkt. # 27) ¶¶ 1.8, 1.10.)

11      In the instant motion, Block Mining seeks an order compelling Hosting Source to

12  disclose and deposit into the court's registry "all assets derived from Block Mining's

13  Rigs during the time Hosting Source [allegedly] improperly retained the Rigs, plus all

14  interest Hosting Source has earned on such assets" (hereinafter, the "Assets").  (Mot. at

15  2.)  Block Mining also seeks to recover costs and fees incurred in bringing the instant

16  motion.  (*Id.*)  Hosting Source has agreed to deposit into the court's registry

17  $156,111.88—which it characterizes as "undisputed funds"—but refuses to  deposit the

18  "full amount requested by Block Mining."  (Resp. at 2.)  The parties' briefing is complete

19  and this matter is ripe for review.

20

21

22      _____

   [3] Block Mining retrieved the last of its rigs in June 2024.  (Berman Decl. (Dkt. # 68) ¶ 5.)

ORDER - 3

1

### III.   ANALYSIS[4]

2      Block Mining's instant motion to compel is premised on Rule 64(a) and RCW

3  4.44.480.  (Mot. at 1.)  Rule 64(a) provides, in pertinent part, that "throughout an action,

4  every remedy is available that, under the law of the state where the court is located,

5  provides for seizing . . . property to secure satisfaction of the potential judgment."  Fed.

6  R. Civ. P. 64(a).  Washington law, in turn, provides that:

7      When it is admitted by the pleading or examination of a party, that the party
       possesses or has control of any money, or other thing capable of delivery,
8      which being the subject of the litigation, is held by him or her as trustee for
       another party, or which belongs or is due to another party, the court may
9      order the same to be deposited in court, or delivered to such party, with or
       without security, subject to the further direction of the court.

10
RCW 4.44.480.

11
       Block Mining argues that an order compelling Hosting Source to disclose and
12
deposit the Assets into the court's registry is appropriate because:  (1) Hosting Source
13
falsely represented that it was holding Block Mining's Bitcoin "in trust"; and (2) Block
14
Mining is "uncertain and concerned about the status of" the Assets given Hosting
15

16
       [4] As a preliminary matter, Hosting Source objects that the exhibits "submitted with
17  [Block Mining's] motion lack authentication" under Washington Rule of Evidence Rule 901.
    (Resp. at 4 (capitalization omitted).)  The court summarily denies this objection on two bases.
    First, the Federal Rules of Evidence apply to the instant action.  *See Wray v. Gregory*, 61 F.3d
18  1414, 1417 (9th Cir. 1995) ("the Federal Rules of Evidence ordinarily govern in diversity
    cases").  Second, Federal Rule of Evidence 901(a) provides:  "[t]o satisfy the requirement of
19  authenticating . . . evidence, the proponent must produce evidence sufficient to support a finding
    that the item is what the proponent claims it is."  Authentication may be established by testimony
20  "of a witness with knowledge" "that a matter is what it is claimed to be."  *Id.* at 901(b)(1).  The
    exhibits submitted with Block Mining's motion consist of various email communications
21  between Block Mining's counsel, Eli Berman, and Hosting Source's counsel, and Hosting
    Source's discovery responses, all of which Mr. Berman testifies were sent or received by him
22  and are authentic.  (*See* Berman Decl. (Dkt. # 68) ¶¶ 3-11, Exs. A-F); Reply at 6.)

1   Source's alleged "deception" regarding the Assets.  (Mot. at 4; Reply at 5 ("[Hosting

2   Source's] deception is even more reason to grant relief").).)[5]  The court examines each of

3   these arguments below.

4   **A.      Hosting Source's Representations**

5        Block Mining contends that RCW 4.44.480 is satisfied here because Hosting

6   Source "falsely" represented that it was holding the Assets "in trust" for Block Mining.

7   (Mot. at 6; *id.* at 3-4.)  In support, Block Mining points to a March 2, 2024 letter, before

8   this action was initiated, in which Hosting Source's counsel represented that it would

9   "hold funds in trust pending the resolution" of the parties' dispute regarding the

10  $278,242.41 in claimed fees that Hosting Source asserted Block Mining owed.  (Mot. at 3

11  (citing Marchiori Decl. ¶ 60, Ex. J).)  Block Mining also points to Hosting Source's

12  motion to dismiss, in which Hosting Source stated that it was holding various property

13  "in trust" at Hosting Source's colocation facility.  (*See* MTD (Dkt. # 25) at 6-7 (stating

14  that the "return of any property held in trust on Hosting Source's colocation site must

15  comply with contract terms so that Hosting Source is not damaged"); 7 (stating that the

16  "computers" are held "in trust"); *id.* at 10, 11.)

17       In a May 2024 email message, Block Mining's counsel requested information

18  about the "trust" referenced in the March 2024 email and Hosting Source's motion to

19

20       [5] Block Mining asserts that there are "additional factors prompting [it] to bring this
    motion" at this time but "omits from [its] motion a detailed discussion of its understanding of the
21  current status of the[] [A]ssets" because Hosting Source's counsel invoked Federal Rule of
    Evidence 408 when providing this information to Block Mining.  (Mot. at 2 n.1; *see id.* at 4;
22  Reply at 2.)

ORDER - 5

1 dismiss.  (Mot. at 3-4.)  In response, Hosting Source's counsel stated that it did not

2 "inten[d] . . . to suggest a formal trust as defined by Washington statute[;]" rather, it

3 "aimed to highlight the physical possession and custody of the servers at Hosting

4 Source's facility and the management and holding of the products of the mining

5 activities."  (Berman Decl. (Dkt. # 68) ¶ 4, Ex. B.)  In that same email, Hosting Source

6 stated that it was "managing the Bitcoin in a manner consistent with . . . the [parties']

7 [A]greement."  (*Id.*)  In its response to Block Mining's discovery requests, Hosting

8 Source stated that it used the phrase "in trust" "colloquially" to "describe Hosting

9 Source's efforts to manage and safeguard the [p]arties' property for accurate accounting

10 and subsequent *pro rata* distribution, as outlined in the [] Agreement."  (Berman Decl.

11 ¶ 6, Ex. C at 4.)  In same discovery response, Hosting Source also said that it

12 "redirect[ed] [the] mining activities" to a digital destination, and provided the link,

13 account name, and password.  (*Id.*)  Block Mining understands that Hosting Source

14 controls the destination where the Assets were redirected.  (Mot. at 3 (citing Berman

15 Decl., Ex. C).)

16       In its response brief, Hosting Source disputes that it holds the Assets as trustee for

17 Block Mining within the meaning of RCW 4.44.480.  (*See* Resp. at 1-2.)  It further argues

18 that the parties' Agreement does not create a trust or impose any custodial duties on

19 Hosting Source.  (*See id.* at 2-3.)

20       Having reviewed the parties' briefs and supporting materials, the court cannot

21 conclude that Hosting Source is holding the Assets in trust for Block Mining.  Block

22 Mining's argument heavily depends on Hosting Source's use of the term "trust" in the

ORDER - 6

1   March 2024 email message and motion to dismiss.  But Hosting Source's use of the term

2   "trust" is "not conclusive proof of intent to create a trust."  *See In re Foam Sys. Co.*, 893

3   F.2d 1338, at *3 (9th Cir. Jan. 12, 1990); *see Koken v. First Hawaiian Bank*, 230 F.3d

4   1367, at *2 (9th Cir. Sept. 5, 2000) (collecting authorities).  Rather, "the operative factor

5   is the intent of the parties."  *Koken*, 230 F.3d  at *2; *see also Cedar River Water & Sewer*

6   *Dist. v. King Cnty.*, 315 P.3d 1065, 1073 (Wash. 2013) ("[T]he 'key element' is whether

7   the parties intended a trust relationship rather than a contractual relationship." (citation

8   omitted)).  Furthermore, "[u]nder modern law, holding funds for a purpose does not, by

9   itself, establish a trust or fiduciary relationship." *Cedar*, 315 P.3d at 1073.

10          On the facts as described, the court finds no basis to impose a trust relationship in

11   this case.  The Agreement itself does not establish a trust relationship or mention the term

12   "trust."  And beyond Hosting Source's use of the word "trust" in correspondence and

13   later legal filings, Block Mining does not provide any evidence that the parties intended

14   to create a trust relationship.  Moreover, Block Mining has not provided—and the court is

15   not aware of—any case law imposing a trust under the circumstances described in the

16   parties' briefing.  Accordingly, the court declines to find that Hosting Source is holding

17   the Assets as trustee for Block Mining.

18   **B.      Hosting Source's Alleged "Deception" Regarding the Assets**

19          Block Mining further argues that the court should compel Hosting Source to

20   deposit the Assets into the court's registry because its "deception about holding mining

21   proceeds 'in trust' raises substantial concerns that the [A]ssets . . . are at significant risk

22   of dissipation, misapplication or diversion."  (Mot. at 2; *see id.* at 4 (stating that Block

1    Mining "continues to be uncertain and concerned about the status of the [A]ssets in

2    question").)  In support, Block Mining relies on *Engelhart v. Hansen*, an unpublished

3    Washington Court of Appeals opinion affirming the trial court's decision to sequester

4    funds owed to the defendant in part because the trial court found the defendant acted

5    "evasive[ly]" in providing financial information during trial.  (*See* Mot. at 6-7 (citing

6    *Engelhart v. Hansen*, 33 Wash. App. 2d 1064, at *2, *10 (Wash. Ct. App. 2025)

7    (unpublished)); *see* Reply at 2 (stating that *Engelhart* "affirmed relief under RCW

8    4.44.480 based on a finding of 'financial evasiveness'").)

9         As a threshold matter, unpublished opinions of the Washington Court of Appeals

10    have no precedential value.  *See* Wash. Gen. R. 14.1(a).  Setting that aside, *Engelhart*

11    demonstrates that RCW 4.44.480 applies in narrow circumstances distinguishable from

12    the case at bar.  In that case, the parties did not dispute that the defendant was entitled to

13    the funds that were sequestered in the court's registry before they were deposited; indeed,

14    the court entered the parties' agreement prior to trial.  *See Engelhart*, 33 Wash. App. 2d

15    at *2.  In the instant case, however, the parties dispute the other's right to the Assets.

16    (*See generally* Mot.; Resp.)  Accordingly, the court is not persuaded by *Engelhart*.

17         There is a dearth of recent and published case law addressing RCW 4.44.480.  The

18    Washington Supreme Court's opinion in *Rainier National Bank v. McCracken*, 615 P.2d

19    469, 476 (1980), however, is instructive to the instant dispute.  In interpreting RCW

20    4.44.480, the *Rainier* court[6] concluded that "[a] party who claims title or right to funds in

21

_____

22    [6] In construing RCW 4.44.480, the Washington Supreme Court relied on a California
statute that was "substantially the same" as RCW 4.44.480.  *Rainier*, 615 P.2d at 476.

1   his or her possession cannot be compelled to pay such funds into the [court's] registry

2   . . . in a summary manner." *Rainier*, 615 P.2d at 475-76.  In that case, the trial court

3   entered a pretrial order in favor of the respondent bank requiring the appellants—who

4   were purchasers of a vendor's interest in a real estate contract—to deposit the proceeds

5   obtained from the real estate contract into the court's registry.  *Id.* at 476.  The bank and

6   the appellants disputed the other's right to the funds at the time the pretrial order was

7   entered.  *See id.*  On appeal, the *Rainier* court concluded that the pretrial order was

8   invalid, reasoning that "the [appellants] at all times claimed title and right to all of th[e]

9   funds," and "that issue had not been judicially determined at the time" the pretrial order

10   was entered.  *Id.* at 477.  Because Block Mining and Hosting Source, like the *Rainier*

11   parties, dispute the other's right to the Assets in question, the court denies Block

12   Mining's motion to compel.  The court also denies Block Mining's request to recover

13   costs and fees incurred in connection with this motion.

14   **C.     The Undisputed Assets**

15          The parties do not appear to dispute that $156,111.88 should be deposited into the

16   court's registry.  (*See* Resp. at 2; Reply at 5-6.)  Accordingly, the court concludes that it

17   may properly compel Hosting Source to deposit $156,111.88, with interest accrued on

18   that amount, into the court's registry.  *Cf. Stewart v. Moss*, 192 P.2d 362, 368 (Wash.

19   1948) (affirming trial court's order requiring witness to pay funds into the court's registry

20   when "[t]he witness had expressed willingness to do so and had disclaimed all interest in

21   the fund[s]").  The court will not require Block Mining to post security.  *See* RCW

22   4.44.480 ("[T]he court may order the [assets] to be deposited in court . . . with or without

ORDER - 9

1  security[.]"); *Yamaha Motor Corp., U. S. A. v. Harris*, 631 P.2d 423, 427 (1981) ("The

2  setting of a bond is a matter solely within the discretion of the trial court." (citation

3  omitted)).

### IV.    CONCLUSION

5        Based on the foregoing, the court DENIES Block Mining's motion to compel

6  (Dkt. # 67).  The court ORDERS Hosting Source to deposit $156,111.88, with accrued

7  interest, into the court's registry in accordance with Local Civil Rule 67 by **July 29,**

8  **2025**.  The Clerk is directed to deposit funds into the Registry of the Court in the

9  principal amount of $156,111.88, plus accrued interest.

10       Dated this 25th day of July, 2025.

11

12                               JAMES L. ROBART
                                United States District Judge

13

14

15

16

17

18

19

20

21

22

ORDER - 10