# EXHIBIT B

PEDERSON
ASSOCIATES,
INC.

October 17, 2025

Justin Reden, Esq.
Reden | Riddell
16885 Via Del Campo Court
Suite 320
San Diego, California 92127

Tyler Shillito, Esq.
Smith Alling, P. S
1501 Dock Street
Tacoma, Washington 98402

**Re:** ***Block Mining, Inc. v. Hosting Source, LLC***
**USDC Western Washington at Seattle**
**Case No. C24-0319 JLR**

Counsel:

You requested on behalf of your client, Hosting Source, LLC "(HS"), that I review and comment on the September 22, 2025, Expert Report proffered by Mr. James P. Brennan of J.S. Held. LLC ("Held") regarding the instant matter.

My review and comments included herein are regarding the financial calculations included therein as disclosed in summary on pages 5 and 6 of said Held Expert Report.

I have not been asked nor am I commenting on the actions or inactions of the parties in the instant matter. I also am not including a preface or any of the disclosures that were included in a September 19, 2025, letter I authored regarding the instant matter; however, I am incorporating that letter in its entirety herein.

I should also state that upon my review of Mr. Brennan;s report, it is not entirely clear to me as to the actual net amounts that are being claimed on behalf of Block Mining ("BM"). My reasoning will be disclosed in the observations and comments that follow.

My observations and comments are disclosed in the remainder of this letter. I am utilizing a bullet point format, which I believe makes it easier to follow.

**Re:** ***Block Mining, Inc. v. Hosting Source, LLC***
**USDC Western Washington at Seattle**
**Case No. C24-0319 JLR**

The following observations follow the sequence noted under **Section II – Summary Opinions**, page 5 of the Held September 22, 2025, report, specifically starting at paragraph 19.

Paragraph 19, subsection i.

- This opinion is a statement that HS directed BitCoin ("BTC") mining rewards to HS, rather than BM during the March 2, 2024, to July 1, 2024, period.
- A further statement is made that HS should have mined 10.57 BC
  - This is based upon an assumption as to the level of power that should have been provided to BM machines. This is a "lost gross revenue" claim.
- Held values this amount at $1,219,746 (which is based upon a September 15, 2024, published BTC rate).
  - The value of this assumed 10.57 BTC, based upon Held's calculation worksheets and the time in which it would have been mined, would have been $705,931; however, it is unclear if Held's calculations include any incremental cost in electricity, or HS' right to 20% of the BTC profits.
- Held ignores in this summary opinion that HS reported it mined 5.3 BTC, which would be an offset to any gross revenue amount proffered in this claim item.
- Held does mention the HS BTC mined amounts in **Section IV -Detailed Findings**, page 12, paragraphs 44 and 45.
  - Held values the difference in projected BTC mined and actual BTC mined by HS at $606,988 as of a September 15, 2024, measurement date.
- It is unclear the substance of this Summary Opinion, which I believe is comprised of two elements, namely –
  - HS has redirected BTC mining rewards away from BM. It is unclear as any claimed financial damages from this statement.
  - BM has been damaged by less than optimum BTC mining during this period.
    - The financial damage BM has allegedly suffered is unclear due to the measurement date. It seems the $1,219,746 disclosed in the Summary Opinion is the calculation of the gross BTC mining rewards that should have been generated (as measured by a September 14, 2024, market valuation date). The Held worksheets indicate the contemporaneous value of this projected mining would have been. $705,931. BM recognizes that HS generated 5.3 BTC during this same period, leaving a shortfall of approximately 5.27 BTC. In their Detailed Findings, they value this difference at $606,988, which is based upon a BTC market price as of September 14, 2024, rather than the contemporaneous daily market price during the period being measured.

- My opinion is that a claim for lost revenue in this period, if applicable, would be measured as follows:
  - Projected BTC mined would be compared to actual BTC mined on a daily basis.
    - Valuation of any differences would be based upon actual prices on a daily basis
    - Valuation would need to consider –
      - Projected electricity costs.
      - Actual electricity costs.
      - Any Fee amounts on the claimed incremental mining volumes.
      - Allocation of HS' 20% profit, if any.
      - Amount of actual BTC mining proceeds that would be allocable to BM.

Paragraph 19, subsection ii,

- This is another "lost gross revenue" type claim. It is similar to the claim proffered in subsection i.
- Held's claim in this section appears to state that the claim period is from January 2023 through July 2024.
  - Their calculation worksheets disclose that the period measured is actually January 2023 through February 2024.
  - Held's calculations are based upon a projected daily mining activity (at the contracted rate of 141,704 PH/s), versus the actual mining activity during the period of measurement.
    - Held states that an additional 21.48 BTC should have been mined during this period. They place a current market value of $2,478,728 for the 21.48 BTC as of September 15, 2024.
    - Held's calculation worksheets indicates the daily value of any shortfalls in BTC mining would total $727,956 based upon daily prices for BTC.
      - It is unclear whether Held's calculations include any incremental cost in electricity, fees, and/or HS' right to 20% of the BTC profits.
- It should be noted that HS calculated and proffered credits on a periodic basis (monthly) to BM for mining equipment downtime or inefficiencies of over $702,000 during the period ending January 2024.
  - These credits appear to have started in November 2021 and ran through January 2024.
  - These credits take into consideration electricity costs and HS's 20% profit share.
  - It is believed that BM was aware of these credits.

Paragraph 19, subsection iii.

- This is essentially BM;s claim for what I would characterize as a diminution of value of the equipment due to alleged underutilization and an alleged untimely manner in which their mining equipment was removed from HS' facility.
- In the instant matter, this claim is mutually exclusive with the "lost gross revenue claims" (claim items i, and ii).
  - As an explanation, if an allegedly injured party makes a claim that would make them whole under the contract (such as the combination of the lost gross revenue claims in the instant matter), they should be precluded from also claiming that the equipment lost value due to underperformance or any delay in being able to take possession of them under the contract. This presumes that had the original contractual arrangement been performed as alleged by BM, they would have enjoyed the results of full utilization of the equipment that is included as the basis for this portion of their claim(s).
    - Reward of compensation under both would be a windfall to the claimant.
      - The claimant would receive compensation for any lost operational profits under the lost gross revenue claims calculated by full utilization of the equipment.
      - The claimant would then also receive compensation for the decrease in value of the equipment due to use (even though not fully utilized) or the passage of time (for which they would have been compensated for both situations under the lost gross revenue claims).

Paragraph 19, subsection iv.

- This is a qualitative opinion, rather than a quantitative opinion.
  - Regardless of whether or not it could be validated, it has no bearing on the quantitative claims as currently proffered. It seems prejudicial, at best, but with no substantive underlying support that I have been provided.

**Conclusion**

You requested on behalf of your client, HS, that I review and comment on the September 22, 2025, Held Expert Report.

As previously noted, it is not entirely clear to me as to actual net amount of damages they are proffering in the instant matter. Further, in those instances whereby they state the values of alleged lost BTC mining rewards, it is unclear to me as why the contemporaneous daily market values, which are included in their calculation worksheets, are not utilized. Rather, a September 14, 2024,

market value is utilized for the calculation amounts they include therein. While not expressly stated, it is unclear to me whether any such amounts proffered regarding lost gross revenues include additional operational expenses such as electricity and fees. It is also unclear whether the Held calculations on loss BTC revenues account for HS' 20% participation in net profits.

Finally, without further explanation, it appears to me that the Held claims on behalf of BM for alleged lost BTC revenues and alleged claims for diminution of equipment value for underutilization and late access to the mining equipment are mutually exclusive. Namely, one cannot claim for lost gross revenues for full utilization of the mining equipment and also claim for diminution of mining equipment value for underutilization whether it is for less than full utilization or late access to remove the equipment in the periods in which lost gross BTC revenues are also claimed.

**Other Representations and Information**

As previously noted in this letter, you should know that my efforts, the results obtained, and the findings disclosed in this letter should be considered preliminary. If any additional relevant information is later disclosed that impacts on the review I have performed and results obtained to date, I will, upon request, review such information and, if appropriate, modify or update this transmittal accordingly.

You should further understand my efforts in reviewing this information do not constitute the preparation of any financial statements or "audit," and the only representations are those directly expressed in this transmittal.

Pederson Associates, Inc. is being compensated for assisting in this matter at its normal hourly rates. My hourly rate is currently $275 per hour. The actual amount charged is dependent upon both the time expended and hourly rate of the professional(s) involved. Pederson Associates, Inc. is also being compensated on a cost reimbursable basis, with no markup, for any third-party out-of-pocket expenses incurred. Billings and payment thereof are not dependent upon the eventual outcome of this matter.

This transmittal is solely for the current dispute regarding the subject matter and is not intended for any other use. Further, this transmittal should not be distributed to any parties other than those that are included in this action, and/or their representatives, without proper consent because any one of them may consider certain information contained herein to be proprietary and/or confidential.

Justin Reden, Esq.
Reden | Riddell
Tyler Shillito, Esq.
Smith Alling, P. S

October 17, 2025

**Re:** ***Block Mining, Inc. v. Hosting Source, LLC***
**USDC Western Washington at Seattle**
**Case No. C24-0319 JLR**

Respectfully submitted,

Paul E. Pederson
President

Attachments