The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BLOCK MINING, INC., f/k/a BLOCKWARE MINING, INC.,<br><br>Plaintiff,<br>vs.<br><br>HOSTING SOURCE, LLC,<br><br>Defendant. | Case No. 2:24-cv-00319-JLR<br><br>**HOSTING SOURCE LLC'S MOTION FOR RECONSIDERATION OF THE DECEMBER 16, 2025, ORDER GRANTING BLOCK MINING, INC.'S PARTIAL MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

Hosting Source, LLC moves for reconsideration of the Court's December 16, 2025 Order granting Block Mining, Inc.'s Partial Motion for Summary Judgment. The Order resolved disputed issues of material fact and relied on an expert damages model based on erroneous valuation data and misapplication of law.

**I.    STANDARD GOVERNING RECONSIDERATION**

A district Court has inherent authority, supplemented by Federal Rule of Civil Procedure 54(b), to reconsider interlocutory orders at any time before entry of final judgment. *Dietz v. Bouldin*, 579 U.S. 40, 45–46 (2016). Because such orders are not final, the Court may revise them to correct clear error or prevent manifest injustice, including where the ruling rests on disputed factual assumptions or erroneous evidence. *See* 18B Fed. Prac. & Proc. Juris. § 4478.1.

HOSTING SOURCE'S MOTION
FOR RECONSIDERATION OF 12/16/25
ORDER GRANTING MSJ
No.: C24-0319JLR

1

REDEN | RIDDELL
16885 Via Del Campo Ct., Ste. 320
San Diego, CA 92127
Telephone: (619) 758-3869

## II. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE PARTIES' COMPETING BREACH OF CONTRACT CLAIMS

The Court concluded that Hosting Source breached the Colocation Agreement and dismissed Hosting Source's breach of contract counterclaim. (12/16/25 Order at 11.)

Block Mining's own contractual performance was disputed. Although Block Mining asserted that it timely paid all amounts due, the record contains sworn testimony establishing repeated late payments, sometimes by months and up to a year, with unpaid balances extending into 2022. (Teegarden Depo. 194:25–195:4; 202:22–203:19; Teegarden Decl. ¶ 18 (Dkt. #83); Teegarden Depo. Ex. 50 (Frank Marchiori: "That is correct, we are all squared up for 2021, but we still owe you energy/profit share for January 2022.")). Whether Block Mining materially breached first bears directly on Hosting Source's obligations and defenses and presents a classic trial question. By crediting Block Mining's version of events, the Court resolved a disputed issue of material fact.

The Agreement does not guarantee uninterrupted full-capacity power or a fixed hashrate; Hosting Source's obligations are expressly qualified by commercial reasonableness and operational constraints. The Court nevertheless treated reduced hashrate as a per se breach, resolving disputed facts concerning power availability, infrastructure limitations, industry practice, and party agreement. The record further reflects evidence that Block Mining itself requested low-power operation to maximize profitability. (Teegarden Decl. ¶¶ 35–38 (Dkt. #83); See Teegarden Depo. Ex. 40.) Whether Hosting Source acted consistently with that request is disputed, yet the Court weighed competing evidence and drew inferences in Block Mining's favor, contrary to Rule 56.

For the same reasons, dismissal of Hosting Source's breach of contract counterclaim was error. Hosting Source presented evidence that Block Mining failed to timely pay amounts due and interfered with Hosting Source's contractual performance. (Teegarden Depo. 194:25–195:4; Teegarden Decl. ¶ 18.) If credited, that evidence supports Hosting Source's counterclaim, yet the Court dismissed it after resolving those disputes in Block Mining's favor.

The Court record reflects disputed material facts regarding the competing contract claims. (Teegarden Depo. 54:10–56:20; 70:16–71:18; 132–33; 152; 194:25–195:4; 202:22–203:19;

HOSTING SOURCE'S MOTION
FOR RECONSIDERATION OF 12/16/25
ORDER GRANTING MSJ
No.: C24-0319JLR

2

REDEN | RIDDELL
16885 Via Del Campo Ct., Ste. 320
San Diego, CA 92127
Telephone: (619) 758-3869

1  Teegarden Decl. ¶¶ 18, 20–21, 26, 31, 36; Stoltzner Decl. ¶¶ 16, 20, 22.) *See* Exhibit 1 to the
2  Declaration of Justin G. Reden, Esq.

### III. THE COURT ERRED IN IMPOSING TORT LIABILITY WHERE THE ALLEGED CONDUCT AND DAMAGES ARE INSEPARABLE FROM CONTRACTUAL PERFORMANCE

The Court granted summary judgment on Block Mining's tort claims for conversion and trespass to chattels, concluding that Hosting Source wrongfully exercised dominion over the mining rigs. (12/16/25 Order at 12, 16.).

Under Washington law, tort liability may arise in a contractual setting only where the defendant breaches a duty that exists independently of the contract. *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 389–90, 241 P.3d 1256 (2010). The inquiry turns on whether the alleged misconduct and resulting injury would exist absent the contract. Where possession, control, or use of property is authorized, conditioned, or constrained by agreement, disputes over the exercise of those rights sound in contract, not tort.

Here, Hosting Source's possession, control, operation, and staged return of Block Mining's rigs arose solely from the Colocation Agreement. Absent that Agreement, Hosting Source would have had no access to Block Mining's property. The Agreement governed power allocation, access, custody, mitigation, and performance through a commercial reasonableness standard. Whether Hosting Source acted reasonably in limiting power, restricting access, or returning the rigs in tranches depended on contractual provisions, industry practice, operational constraints, and Block Mining's nonpayment—issues that are inherently factual and cannot support tort liability as a matter of law.

The record reflects disputed evidence that Hosting Source acted pursuant to perceived contractual rights, in coordination with NYDIG following Block Mining's default, and consistent with the Landlord Waiver. (Teegarden Decl. ¶¶ 14–29.) The Court nevertheless resolved willfulness and wrongfulness as matters of law, effectively converting disputes over contractual performance into tort liability.

HOSTING SOURCE'S MOTION
FOR RECONSIDERATION OF 12/16/25
ORDER GRANTING MSJ
No.: C24-0319JLR

3

REDEN | RIDDELL
16885 Via Del Campo Ct., Ste. 320
San Diego, CA 92127
Telephone: (619) 758-3869

1  The authorities cited by the Court do not compel that result. In *Elcon Constr., Inc. v. E. Washington Univ.*, 174 Wn.2d 157 (2012), the tort claim arose from precontractual fraud that induced contract formation. In *In re Amazon Return Policy Litigation*, 2025 WL 1237665 (W.D. Wash. Apr. 29, 2025), the alleged tort involved affirmative withdrawal of funds wholly extraneous to contract performance. And in *Fuji Food Products, Inc. v. Occidental, LLC*, 6 Wash. App. 2d 1027 (2018), the refusal to return property occurred after the contractual relationship had effectively ended. By contrast, all alleged conduct here occurred during the life of the Agreement and pursuant to its terms.

The damages award confirms the Court's conflation of contract and tort. Of the $1,219,746 awarded, approximately 5.27 BTC was attributed to Bitcoin that allegedly would have been mined had the rigs operated at full power. That component of the award is quintessential contract expectancy damages, dependent on proof of contractual duty, material breach, causation, mitigation, and offset. By awarding those damages under a tort framework, the Court eliminated bargained-for contractual defenses and imposed liability untethered from any independent duty.

By recharacterizing disputed issues of contractual performance as tortious conduct and awarding tort damages based on alleged failures to perform under the Agreement, the Court collapsed the distinction between contract and tort, resolved disputed factual issues as a matter of law, and imposed an inflated damages award unsupported by Washington law. Reconsideration is therefore warranted to prevent manifest injustice.

The Court record reflects disputed material facts regarding the tort vs. contract claims. (Teegarden Depo. 70:16–71:18; 148:14–149:2; 226:14–229:22; Teegarden Decl. ¶¶ 19, 26, 31; Stoltzner Decl. ¶ 22.) *See* Exhibit 1 to the Declaration of Justin G. Reden, Esq.

IV.  **THE COURT ERRED BY FAILING TO PERFORM RULE 702 GATEKEEPING AND BY RELYING ON DISPUTED AND UNRELIABLE EXPERT OPINIONS TO AWARD DAMAGES AT SUMMARY JUDGMENT**

The Court awarded $1,219,746 in tort damages at summary judgment based on the report of Block Mining's expert, James P. Brennan. (12/16/25 Order at 18–20.) In doing so, the Court relied

HOSTING SOURCE'S MOTION
FOR RECONSIDERATION OF 12/16/25
ORDER GRANTING MSJ
No.: C24-0319JLR

4

REDEN | RIDDELL
16885 Via Del Campo Ct., Ste. 320
San Diego, CA 92127
Telephone: (619) 758-3869

1  on disputed expert opinions without performing the mandatory gatekeeping required by Federal
2  Rule of Evidence 702.

3      Before relying on expert testimony, a district court must determine that the testimony is
4  both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). That
5  gatekeeping obligation applies to all expert testimony, including technical and specialized
6  knowledge, and applies equally at summary judgment. *Kumho Tire Co. v. Carmichael*, 526 U.S.
7  137, 147–49 (1999). Courts may not weigh expert credibility, choose between competing
8  methodologies, or resolve factual disputes at summary judgment. *Anderson v. Liberty Lobby, Inc.*,
9  477 U.S. 242, 255 (1986); *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010); *Elosu v.
10  Middlefork Ranch, Inc.*, 26 F.4th 1017, 1022–23 (9th Cir. 2022). Failure to make the required
11  reliability determinations is itself error. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th
12  Cir. 2014).

13      The Court's Order does not reference Rule 702 or analyze the reliability of Brennan's
14  opinions, despite the technical complexity of Bitcoin mining and valuation. Brennan is a forensic
15  accountant with no claimed experience mining Bitcoin, operating rigs, or modeling output under
16  real-world conditions. (Wolf Decl. ¶ 1, Ex. G ¶¶ 10, 13 (Dkt. #81).) He did not examine the rigs,
17  test Hosting Source's systems, define "full power," or analyze network conditions, instead relying
18  on unexplained assumptions and generalized website references.

19      Brennan's valuation methodology further illustrates its unreliability. He valued Bitcoin
20  using a price attributed to September 15, 2024—approximately $115,397 per Bitcoin. (12/16/25
21  Order at 19.) Objective market data establishes that this valuation corresponds to September 15,
22  2025, not 2024, when Bitcoin traded at approximately $60,000. (12/30/25 Teegarden Decl. ¶¶ 5-
23  20.) The valuation post-dates the return of all rigs by several months and relies on market
24  conditions occurring after the alleged conversion had ended. (Mot. at 14 (Dkt. #78).) This error
25  underscores the absence of a reliable methodology and the need for Rule 702 findings.

26      Brennan also relied on unauthenticated website data, including CoinGecko, to establish
27  Bitcoin value. (Wolf Decl. ¶ 1, Ex. G ("Brennan Report") at ¶ 19(i), fn. 3 (Dkt. #81).) As
28

HOSTING SOURCE'S MOTION
FOR RECONSIDERATION OF 12/16/25
ORDER GRANTING MSJ
No.: C24-0319JLR

5

REDEN | RIDDELL
16885 Via Del Campo Ct., Ste. 320
San Diego, CA 92127
Telephone: (619) 758-3869

1  submitted, that valuation was offered for its truth and constitutes unauthenticated hearsay. See
2  *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261–62 (9th Cir. 1984).

3      Hosting Source submitted a competing expert report from Paul Pederson, who identified
4  material flaws in Brennan's assumptions and methodology, including failure to account for actual
5  pricing, electricity costs, fees, and profit allocation. (Pederson Decl., Ex. B at 3 (Dkt. #84).) At a
6  minimum, the competing expert opinions created a genuine issue of material fact that could not be
7  resolved at summary judgment.

8      By accepting Block Mining's expert, rejecting Hosting Source's expert, and awarding final
9  damages without performing Rule 702 gatekeeping or resolving factual disputes through trial, the
10 Court assumed an impermissible factfinding role. Reconsideration is required.

11     The Court record reflects disputed material facts regarding damages. (Wolf Decl. ¶ 1, Ex. G
12 ¶¶ 19, fn 1-3 (Dkt. #81); Teegarden Depo. 227:6–12.) *See* Exhibit 1 to the Declaration of Justin G.
13 Reden, Esq.

## V. EVEN IF THE COURT DECLINES TO RECONSIDER LIABILITY, THE DAMAGES AWARD CANNOT STAND AND MUST BE VACATED OR RECALCULATED

17     Even if the Court declines to reconsider liability, the damages award cannot stand because it
18 rests on an erroneous valuation date, speculative assumptions, and exceeds the measure of damages
19 permitted under Washington law and the parties' Agreement.

20     As discussed above, the Court valued Bitcoin using a price attributed to September 15, 2024
21 that in fact corresponds to September 15, 2025, materially inflating the award. Objective market
22 data establishes that Bitcoin traded at substantially lower values during the legally relevant period.
23 (12/30/25 Teegarden Decl. ¶¶ 5-20.) Because Block Mining's expert supplied an incorrect
24 valuation and the Court relied on it, the damages award is unsupported by the record.

25     Washington law further limits conversion damages to the highest market value within a
26 reasonable time after conversion, and only upon proof of willful conversion. *Glaspey v. Prelusky*,
27 219 P.2d 585, 587 (Wash. 1950). By the Court's own framing, that period closed no later than the
28 filing of suit in early April 2024, when Bitcoin traded well below the value adopted in the Order.

HOSTING SOURCE'S MOTION
FOR RECONSIDERATION OF 12/16/25
ORDER GRANTING MSJ
No.: C24-0319JLR

6

REDEN | RIDDELL
16885 Via Del Campo Ct., Ste. 320
San Diego, CA 92127
Telephone: (619) 758-3869

Consequential damages, moreover, must be proven with reasonable certainty and may not rest on hypothetical or speculative assumptions. *Dennis v. Southworth*, 467 P.2d 330, 332–33 (Wash. Ct. App. 1970).

The award also fails to apply Section 8.2 of the Colocation Agreement, which limits liability to replacement cost and 3 months of gross revenue. While the Court acknowledged that provision, it did not apply its formula in calculating damages. The selective enforcement of contractual limitations governing liability constitutes manifest error.

Accordingly, if the Court declines to reconsider its liability rulings, it should at a minimum vacate the damages award and require recalculation based on the correct valuation date, the legally permissible damages window, and the contractual limitations governing liability. No damages award can stand where the underlying valuation is demonstrably incorrect and the governing legal framework was not applied.

## VI. CONCLUSION

Hosting Source respectfully requests that the Court vacate its December 16, 2025 Order granting summary judgment. If the Court declines to reconsider liability, the damages award must be recalculated using the correct valuation consistent with the parties' Agreement.

I certify that this memorandum contains 1,994 words in compliance with the Local Civil Rules and does not exceed 6 pages.

Dated: December 30, 2025

REDEN | RIDDELL

By: /s/ Justin G. Reden
Justin G. Reden, CA Bar # 230068
Attorneys for Defendant

SMITH ALLING, P.S.

By: /s/Kelly DeLaat- Maher
Kelly DeLaat- Maher, WSBA No. 26201
C. Tyler Shillito, WSBA No. 36774
Attorneys for Defendant

HOSTING SOURCE'S MOTION
FOR RECONSIDERATION OF 12/16/25
ORDER GRANTING MSJ
No.: C24-0319JLR

7

REDEN | RIDDELL
16885 Via Del Campo Ct., Ste. 320
San Diego, CA 92127
Telephone: (619) 758-3869